IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                              )
                                    )
STEVEN A MAHANNAH and               )   Case No. 07-61816
ANNETTE Y MAHANNAH,                 )
                                    )
        Debtors.                    )

ORDER DENYING MOTION TO RESCIND
REAFFIRMATION AGREEMENT WITH TELCOMM CREDIT UNION

Debtors seek to rescind a Reaffirmation Agreement with TelComm Credit Union. TelComm opposes their request. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons announced at the conclusion of the hearing held November 5, 2008, and for the reasons that follow, the Motion to Rescind Reaffirmation Agreement is DENIED.

The Debtors filed a voluntary Chapter 7 petition on December 12, 2007. They are represented in this bankruptcy case by the law firm of Wagoner, Maxcy & Westbrook, P.C. (the "Wagoner Firm"). On February 1, 2008, the Debtors signed a Reaffirmation Agreement reaffirming three different loans with TelComm, secured by a 1999 Chrysler Town and Country, a 1993 Fleetwood Bounder, and a 2001 Ford F350.[1] Their attorneys declined to sign the Agreement, however, because they did not

---

[1] Although not clear from the record, these loans may have been cross-collateralized. The Reaffirmation Agreement calls for a single monthly payment of $779.00 per month as to all

think it was in the Debtors' best interests.  The Agreement was filed with the Court on February 14, 2008, and the Court scheduled a hearing on it for April 16, 2008.  The Debtors appeared at the hearing and, although their attorneys did not sign the Agreement, the Wagoner Firm appropriately arranged to have one of its attorneys, Mr. Marc Licata,[2] attend the hearing with the Debtors.  At the hearing, the Debtors represented to the Court that they were current on the obligations being reaffirmed and that they understood the consequences of reaffirming the debts.  At that point, the Chapter 7 Trustee in the Debtor's case stated that there may be a question as to the validity of the lien on the 2001 Ford 350 truck.  Nevertheless, I approved the Agreement, mentioning that the Debtors had sixty days in which to rescind it if the lien turned out to be invalid.  The Order approving the Reaffirmation Agreement was entered on April 18, and the Debtors received their discharge that same day.

Shortly thereafter, the Debtors turned the truck over to the Trustee, at the Trustee's request, pending resolution of the lien perfection issue.  Several months later, on August 22, 2008, the Debtors filed a first motion to rescind the Reaffirmation Agreement, acknowledging that the motion to rescind had been filed outside of the

---

three loans being reaffirmed.

[2] Although Mr. Licata left the Wagoner Firm at around this time, it would appear that, at the time of this hearing, Mr. Licata was still employed there.

time allowed under § 524(c)(4),[3] but asserting that there were newly discovered circumstances, namely, that the lien was not perfected and that the Trustee had possession of the truck. That motion to rescind was set for hearing on September 17, 2008. TelComm opposed the motion to rescind, saying that it did have a perfected lien on the truck, and that there was no authority under which the Debtors could rescind the Agreement at that late date.

According to the Debtors, on September 15, two days before the hearing on the motion to rescind, the Trustee advised them that the lien was, in fact, perfected. As a result, at the September 17 hearing, at which the Debtors were again represented by Mr. Licata, but this time as local counsel for the Wagoner Firm,[4] the Debtors orally withdrew the motion to rescind, and the Trustee orally abandoned his interest in the truck. TelComm's counsel asserted that the Debtors were behind on payments under the Agreement and asked that the truck be turned over to it, as opposed to the Debtors. By Order entered September 18, I denied TelComm's request and ordered the Trustee

---

[3] Section 524(c) sets forth the elements required for a reaffirmation agreement to be enforceable, one of which is that "the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim." 11 U.S.C. § 524(c)(4). Here, sixty days from the February 14 filing of the Reaffirmation Agreement was April 14, so the § 524(c)(4) deadline to rescind it was April 18, 2008, the day the Debtors' discharge was entered.

[4] The Wagoner Firm is based out of Kansas City, Missouri with an office in Springfield. By the time of the September 17 hearing, Mr. Licata had left the Wagoner Firm, but was appearing in Springfield matters as local counsel on their behalf.

3

to return the truck to the Debtors.

On September 28, the Debtors filed a second motion to rescind the Reaffirmation Agreement, which is the motion at issue here. Once again, they are outside of the time to do so under § 524(c)(4). Rather, they ask for relief from the Agreement and the Order approving it under Rule 60(b)(1)[5] for mutual mistake, asserting that neither they, nor the Credit Union, would have signed the Agreement if they had known from the outset that the lien was not perfected. And, they say, they went on operating under the assumption that the lien was not perfected for several months after the Agreement was approved. Indeed, they even turned the truck over to the Trustee. They assert that the fact that they later found out that the lien was perfected should not preclude them from rescinding. They also say that, while they thought they understood the consequences of signing the Agreement at the time, they did not believe they could be responsible for an agreement when the basis for it was called into question after the Court approved it. Meanwhile, they stopped making payments under the Agreement, although they offered no evidence as to when they stopped making the payments. Finally, they say that they interpreted my statement at the April 16 hearing that they had sixty days from the date of that hearing or from

---

[5] Fed. R. Civ. P. 60(b)(1), made applicable in this bankruptcy proceeding by Fed. R. Bankr. P. 9024.

the resolution of the lien issue in which to rescind, as opposed to the sixty days provided under § 524(c)(4). In sum, the Debtors urge me to allow them to rescind because it would be inequitable under the circumstances not to do so.

TelComm again opposes the motion to rescind. It maintains that there was no mutual mistake – it knew all along that its lien was perfected. Furthermore, the Reaffirmation Agreement was the result of negotiations whereby TelComm agreed to reduce the interest rate and payment amounts. TelComm contends that the equities of this case do not warrant a rescission so far outside the time allowed to do so under § 524(c)(4).

At the November 5 hearing on this Motion to Rescind, Mr. Licata again appeared for the Debtors as local counsel for the Wagoner Firm. He stated that, at the time the Debtors signed the Agreement, he had advised them not to do so because he did not believe that it was in their best interests, and he (appropriately) declined to sign off on it. Nevertheless, the Debtors state that they went ahead and signed the Agreement on their own because they had had a long-term relationship with a bank officer at TelComm (who was later terminated from his position there for reasons unrelated to this matter) and because they wanted to "rebuild their credit."[6] Although Mr. Licata had advised the Debtors not to sign the Agreement because it was not in

---

[6] *Motion to Rescind Reaffirmation Agreement*, filed Sept. 28, 2008 (Doc. #36), at ¶ 7.

their best interests, as local counsel, he could not confirm whether anyone at the Wagoner Firm had verified the perfection of the liens or advised the Debtors as to the consequences of signing the Agreement.

As announced at the conclusion of the November 5 hearing, I will deny this second Motion to Rescind. Rule 60(b) provides that, on motion or just terms, the court may relieve a party or its legal representative from a final order for mistake, inadvertence, surprise, or excusable neglect.[7] The Debtors request relief from the Order approving the Agreement on the ground that they entered into it, and the Court approved it, by mistake. However, the first mistake which they assert constitutes grounds for relief from the order approving the Agreement – namely, that they entered into the Agreement believing that the lien *was* perfected – was not a mistake. The lien was perfected.

Alternatively, the Debtors assert that they should be allowed to rescind because, as the Debtors phrase it, the parties "assumed" for several months after signing the Agreement that the lien was *not* perfected, and they turned the truck over to the Trustee and stopped making payments under the Agreement, based on that incorrect assumption. However, this all occurred *after* the Debtors entered into the Agreement and the Court approved it and, as a result, does not constitute a mistake relating to

---

[7] Fed. R. Civ. P. 60(b)(1); Fed. R. Bankr. P. 9024.

those events. Additionally, a reaffirmation agreement is akin to a settlement agreement, relief from which is typically permitted only when the mistake is mutual.[8] TelComm says it knew all along that its lien was perfected and, therefore, any purported mistake was not mutual. Consequently, the mistakes alleged by the Debtors do not constitute grounds for relief under Rule 60(b)(1).

Although the Debtors do not specifically allege excusable neglect in their Motion to Rescind, they are requesting Court permission to rescind outside the time allowed under § 524(c)(4), based on the events that occurred after they signed the Agreement and obtained Court approval. They contend that they did not rescind within the time limit because of the delay in verifying the lien perfection and this Court's announcement at the conclusion of the April 16 hearing that the Debtors had sixty days in which to rescind. This argument sounds of excusable neglect.

The determination of whether neglect is excusable is an equitable one, taking into account all relevant circumstances surrounding the party's omission.[9] Factors to be considered include (1) the danger of prejudice to the debtor; (2) the length of the

---

[8] *See Brown v. Genesee*, 872 F.2d 169, 174 (6th Cir. 1989) ("[O]nly the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement. . . . [and] a unilateral mistake is not sufficient to allow the mistaken party to limit or avoid the effect of an otherwise valid settlement agreement.").

[9] *Amtech Lighting Serv. Co. v. Payless Cashways (In re Payless Cashways, Inc.)*, 230 B.R. 120, 138 (B.A.P. 8th Cir. 1999) (*citing Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[10] Relief under Rule 60(b) is an extraordinary remedy.[11]

Although there is no danger of prejudice to the Debtors in allowing them to rescind, TelComm would be prejudiced in allowing them to do so at this point. Although the Debtors offered no evidence as to when they ceased making payments, they certainly had done so before the September 17 hearing, and TelComm was prohibited from taking possession of the truck for several months despite the default. TelComm requested at the September 17 hearing that the Trustee be directed to turn the truck over to it, but, since the Debtors withdrew their original motion to rescind, I ordered that the truck be turned over to them. The Debtors also appear to have retained possession of the remaining items of collateral all this time as well, apparently without making any payments under the Agreement.[12]

As to the length of the delay, the Debtors learned that there was a question about the lien at about the time of the April 16 hearing. It then took four months for

---

[10] *Id.* (*citing Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489)

[11] *In re Design Classics, Inc.*, 788 F.2d 1384 (8th Cir. 1986).

[12] As mentioned above, the Reaffirmation Agreement called for one combined monthly payment of $779 per month for all three loans being reaffirmed.

the Debtors to file their first motion to rescind, and five months for the parties to ultimately determine whether the lien was valid. Meanwhile, they stopped making payments. Although this delay may not have been overly prejudicial to the bankruptcy proceeding generally, it was prejudicial to TelComm.

The reason for the delay is given the greatest import in this analysis.[13] I recognize that the April 18 deadline to rescind was only two days after the April 16 hearing at which they appear to have first learned that the Trustee had a question about the lien. In addition, the Debtors state that my suggestion at the April 16 hearing that the Debtors had sixty days in which to rescind caused them some confusion. However, the Debtors waited until August 22, over four months later, to file their first motion to rescind. To the extent that they interpreted my statement at the hearing to mean that they had sixty days from the date that the Trustee took action to avoid the lien, the Trustee never took such action because the lien was valid all along. The Debtors also offered no evidence as to why it took until mid-September, or nearly five months, for the parties to ultimately determine that the lien was perfected. As the parties seeking relief on that basis, they bore the burden of explaining the reason for the delay. I also find it significant that the Debtors withdrew their original motion to

---

[13] *Land O'Lakes Farmland Feed LLC v. Gehl (In re Gehl)*, 324 B.R. 756, 759 (Bankr. N.D. Iowa 2005) (*citing Gibbons v. U.S.*, 317 F.3d 852, 854 (8th Cir. 2003), and *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 460 (8th Cir. 2000)).

rescind at the September 17 hearing and, over TelComm's objection, requested at that time that the truck be returned to them.

Although I do not question the Debtors' good faith *per se*, as stated above, the Debtors signed this Reaffirmation Agreement on their own, despite Mr. Licata's advice to the contrary, because they had a long-term relationship with the banker. In accordance with the Local Rules for this District, Debtors' counsel certified that the parties had executed this Court's "no-look fee" Rights and Responsibilities Agreement in this case.[14] That Agreement specifically provides that counsel will advise the debtor(s) of the effect of proposed reaffirmation agreements and, where appropriate, negotiate alternate terms with secured creditors.[15] Part of an attorney's duties in advising debtors about the effect of signing a reaffirmation agreement is to either determine whether the lien is valid as to the debt being reaffirmed or, if the validity of the lien has not been determined by the time the debtor signs the agreement, that the debtor understands the consequences of what will happen if the lien turns out to be invalid.

---

[14] *Certification by Debtor(s) Attorney that the applicable Rights and Responsibilities Agreement pursuant to Local Rule 2016-D has been executed* (Doc. #3).

[15] The Rights and Responsibilities Agreement also provides that counsel will attend any hearing scheduled on a reaffirmation agreement, regardless of whether the attorney has signed off on it. As mentioned above, Mr. Licata did appropriately attend each of the hearings regarding this Reaffirmation Agreement.

Indeed, the Debtors confirmed at the April 16 hearing that they understood the consequences of their decision to reaffirm. The fact that it turned out that they did not understand the consequences does not constitute excusable neglect sufficient to permit them to rescind it so long after the deadline for doing so under § 524(c)(4). As a result, the Court will deny their Motion to Rescind under Rule 60(b).

At the November 5 hearing, the Trustee stated that the Debtors had not retrieved the truck after he advised them that the lien was perfected, and that he still has possession of it. Mr. Licata stated that the Debtors no longer want the truck. As a result, the Trustee is directed to turn the truck over to TelComm.

ACCORDINGLY, the Debtors' Motion to Rescind Reaffirmation Agreement is DENIED. The Chapter 7 Trustee is ORDERED to turn the 2001 Ford 350 truck over to TelComm Credit Union.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 11/17/2009

Attorney for Debtor to serve parties not receiving electronic notice